IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:08-CV-182-H

ANGELINA MITCHELL and JERRAINE          )
CANNON, on behalf of themselves and all )
others similarly situated,              )
                                        )
                Plaintiffs,             )
                                        )       **MEMORANDUM AND**
        v.                              )       **RECOMMENDATION**
                                        )
SMITHFIELD PACKING COMPANY, INC.,       )
                                        )
                Defendant.              )

This case is before the court on the motion (D.E. 72) by plaintiffs Angelina Mitchell

("Mitchell") and Jerraine Cannon ("Cannon") (collectively "named plaintiffs") for certification of

their claims under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq.*

("NCWHA") as a class action pursuant to Fed. R. Civ. P. 23 ("Rule 23") and their motion (D.E. 69)

for conditional certification of their other claims, brought under the Fair Labor Standards Act of

1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, as a representative action pursuant to the FLSA, 29

U.S.C. § 216(b) ("§ 216(b)"). The motion for conditional certification under the FLSA also requests

approval of a notice and consent form for distribution to class members. The motions are ripe for

adjudication.[1] For the reasons set forth below, it will be recommended that the motions be allowed.

---

[1] The motion to certify the NCWHA claims as a class action pursuant to Rule 23 is supported by a memorandum (D.E. 73) with exhibits (D.E. 73-1 through 73-23) and a declaration (D.E. 74). Defendant filed a memorandum in opposition (D.E. 83) with exhibits (D.E 83-1 through D.E. 83-10). Plaintiffs filed a reply memorandum (D.E. 96) with exhibits (D.E. 96-1 through 96-12).

The motion to conditionally certify the FLSA claims is supported by a memorandum (D.E. 70) and declaration (D.E. 71). Defendant filed a memorandum in opposition (D.E. 84) with exhibits (D.E.84-1 through 84-8). Plaintiffs filed a reply memorandum (D.E. 91) with exhibits (D.E. 91-1 though 91-27).

The parties thereafter filed multiple notices of supplemental authority (D.E. 97, 106, 107, 108, 109, 110, 111, 112, 114, 115, 116) in support of their respective positions on both motions, many of which included substantial legal argument. While the court has considered all of these submissions, it reminds the parties that Local Civil Rule 7.1(g), E.D.N.C., allows parties to file "[a] suggestion of subsequently decided controlling authority, *without argument*" and directs that such submissions "shall contain only the citation to the case relied upon if published or a copy of the opinion

## FACTUAL BACKGROUND

### I.    PLAINTIFFS' CLAIMS

The named plaintiffs and other members of the putative class ("plaintiffs") are former production and support employees of defendant Smithfield Packing Company, Inc. ("defendant") at its Kinston, North Carolina pork processing facility referred to as "K-1," which closed in May 2008. (Am. Compl. (D.E. 52) ¶ 1). Plaintiffs performed various tasks relating to pork processing, including cutting, mixing, cooking, cleaning, and packaging or otherwise preparing the pork for distribution. (*Id.* ¶ 16). Plaintiffs allege that defendant failed to compensate them for all hours worked. (*Id.* ¶ 1). The particular activities plaintiffs were required to perform but for which they were not compensated are: donning and doffing protective items and hygiene-related equipment; sanitizing their safety and sanitary equipment and gear; waiting to punch a time clock; waiting for the production line to begin; and walking to and from the worksite on or near the processing floor.[2] (*Id.* ¶ 22).

Plaintiffs assert two sets of claims: one for violations of the NCWHA and the other for violations of the FLSA. They seek unpaid back wages, unpaid benefits, liquidated damages, attorneys' fees, and other relief. (*Id.*, Prayer for Relief ¶¶ 5-7). Defendant generally denies plaintiffs' substantive allegations. (*See* Def.'s Ans. (D.E. 55)).

---

if the case is unpublished." (emphasis added).

[2] Under the FLSA, activities which are preliminary to or postliminary to "principal activities" are generally excluded from compensable time. 29 U.S.C. § 254(a)(1), (2). However, those tasks are compensable if they are determined to be "an integral and indispensable part of the principal activities for which covered workmen are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also* 29 C.F.R. § 790.8(b), (c) (defining "principal activity" to include activities that are an integral part of a principal activity and indispensable to its performance). Plaintiffs allege that the activities referenced are compensable on this basis.

As indicated, plaintiffs seek certification of their NCWHA claims as a class action under

Rule 23 and conditional certification of their FLSA claims under § 216(b).[3] The proposed class for

both sets of claims is as follows:

> All former production and support employees who were employed by Smithfield
> Packing Company, Inc., as non-exempt, hourly employees at the "K-1" Kinston,
> North Carolina facility, at any period of time from October 24, 2005 until May 2008,
> who were paid on "GANG TIME" basis.[4]

(Am. Compl. ¶ 3).

## II.   PAY AND RELATED PRACTICES AT THE K-1 PLANT

Most of the 508 hourly employees at the K-1 plant were paid on a "gang time" system (also

known as a "line time" or "schedule time" system)—that is, the vast majority of their compensation

was based on the time they spent working on the production line. (*See, e.g.*, Am. Compl. ¶ 20;

Antiquea Allen Rule 30(b)(6) Dep. (D.E. 73-7) 19:7-20:10). In addition to this compensation, some

employees at the K-1 plant were paid for five minutes a day for donning and doffing "prep time"

activities. (K-1 Prep Time Definition Sheets (D.E. 73-11) 2-4; Allen Dep. (D.E. 73-7) 26:20-29:21).

With the exception of certain employees, such as box makers and jack drivers, employees in the

departments known as East Pack and West Pack received compensation for "prep time." (*See* Allen

Dep. (D.E. 70-21) 28:9-21, 34:10-14, 68:15-73:8, 68:20-22).

Employees at the K-1 plant were required to "punch in" (*i.e.*, punch in at a time clock) for

purposes of attendance and discipline. (Allen Dep. (D.E. 73-7) 13:3-24; 43:10-25; 44:1-10). Punch

---

[3] Although the FLSA does not speak in terms of class certification as does Rule 23, many courts use such language when referring to representative actions under § 216(b) for ease of reference and uniformity. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). The court will follow this practice in the instant case.

[4] In plaintiffs' motion for class certification under Rule 23, the time period specified in the class definition is from 24 October 2005 to 24 October 2007, rather than to May 2008. (Mot. (D.E. 72) 1). Because the other submissions reflect the May 2008 end date, the court presumes that 24 October 2007 was a typographical error.

3

time, though, was not used for calculating an employee's paid time. (*Id.*; Tavner Dixon 30(b)(6) Dep. (D.E. 83-3) 43:16-21).

Plaintiffs generally were required to wear some or all of the following safety and protective equipment: a smock; a plastic apron; water-resistant boots; a hairnet; a bump cap; rubber gloves; and ear plugs. (Smithfield PPE Hazard Surveys (D.E. 73-4) 1-18; Smithfield Employee Hygiene Policy (D.E. 73-6) 1-7). Employees using knives were also required to wear specialized Kevlar or metal mesh gloves. (Smithfield Employee Hygiene Policy 4). In addition to differences such as these in the type of items that were donned and doffed, the time of day and place that the plaintiffs don and doff items could vary from employee to employee. (Dixon 30(b)(6) Dep. 21:17-22:2, 23:3-25:21). Similarly, the amount of time it took employees to engage in donning, doffing, and related activities was not uniform. (Mitchell Dep. 62:15-20; Dixon 30(b)(6) Dep. 21:16-20, 23:8-24:24, 41:11-13). Finally, defendant's pay practices related to donning, doffing, and related activities allowed for differing compensation depending on the particular job held by a K-1 employee. (Allen Dep. (D.E. 73-7) 26:20-29:21).

## CONDITIONAL CERTIFICATION OF NCWHA CLAIMS UNDER RULE 23

### I.    CERTIFICATION REQUIREMENTS

A central purpose of class actions is to promote judicial economy and efficiency. *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). "[C]lass actions also 'afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions.'" *Id.* (quoting 5 James Wm. Moore, *et al.*, Moore's Federal Practice § 23.02 (3d ed. 1999)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

4

individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

To be certified as a class action under Rule 23, an action must meet the requirements of both Fed. R. Civ. P. 23 (a) and (b). *Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986). The burden of proving satisfaction of these requirements rests with the parties seeking class certification. *Garcia v. Veneman*, 211 F.R.D. 15, 18 (D.D.C. 2002) (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984)).

Rule 23(a) requires that a precisely defined class exist and that the proposed class representatives be members of the putative class. *Id.*; *Haywood*, 109 F.R.D. at 576; *see East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be a part of the class."). "These requirements are implicit prerequisites to the maintenance of any action under Rule 23." *Haywood*, 109 F.R.D. at 576; *see* Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members.").

In addition, the four prerequisites expressly set out in Rule 23(a) must be satisfied. Fed. R. Civ. P. 23(a). They are that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity requirement"); (2) there are questions of law or fact common to the class ("commonality requirement"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality requirement"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy-of-representation requirement"). Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, — U.S.—, 131 S. Ct. 2541, 2550 (2011) ("The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively 'limit the class claims to those fairly encompassed by the named

5

plaintiff's claims.'") (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)).

If the prerequisites under Rule 23(a) are met, the action must then satisfy one of the four alternative sets of requirements under Rule 23(b). Fed. R. Civ. P. 23 (b). Here, plaintiffs allege a class action maintainable under Rule 23(b)(1) or (b)(3). Subsection (b)(1) requires that proceeding individually would risk inconsistent or varying results and establish incompatible standards of conduct for the party opposing the class. Subsection (b)(3) requires (1) that the questions of law or fact common to the class members predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* (b)(3). Rule 23 goes on to provide a nonexclusive list of factors pertinent to these subsection (b)(3) requirements. *Id.*

Rule 23 should be given "a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.'" *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (internal citations omitted). Courts have "'wide discretion in deciding whether or not to certify a proposed class,'" and a decision to certify a class action "'may be reversed only for abuse of discretion.'" *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (citations and quotations omitted). With the foregoing principles in mind, the court will now address in turn each of the requirements for certification as they relate to plaintiffs' claims.

6

## II.     SATISFACTION OF RULE 23(a) PREREQUISITES

### A.     Threshold Requirement

The court finds that the implicit threshold requirement under Rule 23(a) has been met: plaintiffs have proposed a precisely defined class and the named plaintiffs are members of the class. As noted, the proposed class definition is all former production and support employees employed by defendant as non-exempt, hourly employees at the K-1 plant at any time from 24 October 2005 until May 2008[5] who were paid on a gang time basis. (Am. Compl. ¶ 3). The two named plaintiffs, Mitchell and Cannon, are among the employees within this definition. (Am. Compl. ¶ 6; Mitchell Dep. (D.E. 73-13) ¶¶ 2, 10; Cannon Dep. (D.E. 73-14) ¶¶ 2, 10).

### B.     Enumerated Requirements

The court finds that the four express prerequisites under Rule 23(a) are also met. Each is discussed in turn below.

#### 1.     Numerosity

The Fourth Circuit has held that "[t]here is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). Numerosity must "be resolved in the light of the facts and circumstances of the particular case." *Id.*

Here, the putative class is reasonably estimated by plaintiffs to contain between 500 and 1,000 or more members. (Smithfield Kinston-1 Base Crewing Guide (D.E. 73-3) 2-3). The class is therefore so numerous that joinder of all putative class members is impracticable. *See Gunnells,*

---

[5] While the court finds the definition sufficiently precise for present purposes, it is being recommended below that the parties provide a specific day in May 2008 for the end date of the class period.

348 F.3d at 425 (affirming district court's conclusion that a class of 1,400 employees and their families "easily" satisfied the numerosity requirement); *Central Wesleyan*, 6 F.3d at 183 (noting district court's finding that 480 potential class members satisfied numerosity requirement); *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (holding that the numerosity requirement was met with a proposed class of 46 to 60); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 475 (E.D.N.C. 2010) ("Given that the Fourth Circuit has held that a class of eighteen (18) people alone is sufficient to satisfy the numerosity requirement, the court rejects [defendant's] arguments and concludes that the numerosity requirement has been met."); *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 509 (D.S.C. 2007) (approving a class action of approximately 130 potential plaintiffs). The numerosity requirement is accordingly met.

## 2. Commonality

To meet the commonality requirement of Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, the Rule does not focus entirely on whether plaintiffs have raised common questions, but "rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2551 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."). In *Dukes*, the Supreme Court held that plaintiffs could not show the requisite commonality where they were alleging a pattern or practice of employment discrimination. *Id.* Its holding turned on the fact that in discrimination cases, "the crux of the inquiry is 'the reason for a particular employment decision,' . . . [and] [w]ithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.*;

8

*see also Newberg* § 3:10 ("When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected."). The court, of course, recognizes that the commonality requirement of Rule 23(a)(2) is "'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 n.4 (4th Cir. 2001) (quoting *Amchem*, 521 U.S. at 609). However, while "[t]he issue of predominance is often treated by the courts in conjunction with their 23(a)(2) analysis," *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 41 (D.C. Va. 1981),[6] it remains appropriate to analyze and discuss compliance with the commonality requirement distinctly in Rule 23(b)(3) cases. *See, e.g., Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06-1218-HMH, 2006 WL 3230757, at *6, 8 (D.S.C. 6 Nov. 2006) (analyzing commonality requirement separately and prior to reaching predominance question).

This action satisfies the commonality requirement of Rule 23(a)(2) because the principal questions of law and fact at issue arise from a common nucleus of operative fact, even though the underlying facts may vary among individuals. *Haywood*, 109 F.R.D. at 577. As indicated, the putative class members were employed by defendant during the class period as pork processing workers at the K-1 facility. Each was paid on a gang time basis and it is defendant's implementation of this payment system that plaintiffs contend runs afoul of relevant wage laws that require an employer to pay its employees for all "hours worked." The facts of this case are different from those

---

[6] The court further noted that "[t]he focus of the 23(b)(3) requirement . . . is different. Whereas (a)(2) addresses the issue of whether Rule 23 has any applicability at all to the law suit, (b)(3) addresses the issue of whether Rule 23 certification will have practical utility in the suit, considering the facts, substantive law, procedural due process, and fundamental fairness." *Brown*, 92 F.R.D. at 41-42.

9

in *Dukes*, where there was no uniform policy at issue and liability with respect to each class putative class member depended on unique and subjective circumstances.

As the overview of the facts indicates, there are questions of law and fact common to the members of the putative class. Principal among these questions are whether the time spent donning and doffing protective items and hygiene-related equipment, sanitizing safety and sanitary equipment and gear, waiting to punch a time clock, waiting for the line to begin, and walking to and from the worksite on or near the processing floor were properly compensated by defendant. *See Romero v. Mountaire Farms, Inc.*, No. 7:09CV190BO, --- F. Supp. 2d ---, 2011 WL 2358506, at *11 (E.D.N.C. 9 Jun. 2011) ("Although there may be certain factual differences among the individual class members, the class members' claims arise from the same course of conduct ([defendant's] use of a line time system), raise common questions of law and fact (including, without limitation, whether the time spent changing into and out of protective gear and traveling to and from work stations constitutes 'work'), and are based on the same legal theory (violations of N.C. Gen. Stat. § 95–25.6) as those of the named plaintiffs.").

While defendant argues that plaintiff's advocacy of a "first touch" theory (*i.e.*, that the continuous workday commences upon the employee's first touch of any required personal protective equipment) is incompatible with class certification, the court disagrees. If the "first touch" theory of liability is successful, it would be appropriate for this theory to be applied to all K-1 employees. While such a theory would involve a greater need for individualized assessments of damages than would one allowing for a uniform policy per position or protective items worn, the court cannot conclude that those individualized assessments would work to destroy the element of commonality envisioned by the Court in *Dukes*.

10

### 3. Typicality

The court must next address the extent to which the claims and defenses of the named class members are typical of the claims or defenses of the absent class members. Fed. R. Civ. P. 23(a)(3). "[W]hile the commonality requirement focuses on the claims of the class as a whole, the typicality requirement focuses on the named plaintiff's claim." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)). The named plaintiff's "interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). In other words, the named plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466-67. Generally, the court must determine whether the asserted claims "arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995). "[T]he appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter*, 436 F.3d at 467. However, as the Fourth Circuit has recognized, the necessity of individual damage determinations does not destroy typicality. *Gunnells*, 348 F.3d at 427-28. "In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Id.* at 428.

The typicality requirement of Rule 23(a)(3) is met here because the claims asserted by the named plaintiffs arise from the same practices and are based on the same legal theories as the claims of the unnamed class members, notwithstanding differences in factual circumstances between the

11

named plaintiffs and some other members of the putative class. *See Haywood*, 109 F.R.D. at 578. Like the other members of the putative class, named plaintiffs Mitchell and Cannon were production or support workers at K-1 who were paid on a gang time system and purportedly not paid for time spent engaging in compensable work activities. In addition, like the other putative class members, Mitchell and Cannon assert claims for the same types of violations of the NCWHA and FLSA. Because the interests of the named plaintiffs are essentially the same as those of the unnamed putative class members and the named plaintiffs' personal stake in the outcome of the case ensures zealous pursuit of the action, the named plaintiffs can be expected to adequately protect the interests of the putative class. *See Romero*, 2011 WL 2358506, at *11 ("The named Plaintiffs have the same interests as all other production workers: recovering the wages earned for all uncompensated work time . . . .").

The fact that neither Mitchell nor Cannon was entitled to the additional compensation for "prep time" does not defeat typicality. The named plaintiffs are challenging defendant's payment system as a whole, including the portion of it not providing a "prep time" allotment to certain employees. As Mitchell and Cannon advance their own claims, they will necessarily simultaneously advance the claims of all absent plaintiffs, including those already receiving some partial remediation of the alleged harm in the form of "prep time" payments.

The court, of course, recognizes that calculation of damages for each of the plaintiffs will vary depending on, among other circumstances, the position held, type of protective equipment worn, the time and place the items were donned and doffed, and the amount of time it took the employees

12

to complete these tasks. However, as indicated above, the need for individualized proof of each plaintiff's damages does not render the named plaintiff's claims atypical.[7]

## 4. Adequacy

Rule 23(a)(4) requires that a class representative be capable of fairly and adequately representing the interests of the class. To meet this requirement, plaintiffs must demonstrate that the named class representatives (1) "will vigorously prosecute the interests of the class through qualified counsel" and (2) that they have "common interests with unnamed members of the class." *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). The importance of the adequacy requirement is based on the principle of due process, which "requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338.

### a. **Vigorous Prosecution**

With respect to the requirement of vigorous prosecution, courts have held that it "'involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation . . . .'" *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985)). "[C]ourts generally hold that the employment of competent counsel assures vigorous prosecution." *South Carolina Nat. Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C. 1991) (holding that a named plaintiff's adequacy to represent a class is determined by plaintiff's counsel's ability to vigorously prosecute the matter). Nevertheless, some courts hold that vigorous prosecution also requires that the representatives

---

[7] Plaintiffs state that they are prepared to offer the testimony of an expert who will conduct a survey of a representative sample of workers to determine the average amount of unpaid time at the K-1 plant.

13

themselves have "the willingness and ability . . . to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citations and quotations omitted). The Fourth Circuit has suggested that class representatives need have only some minimal familiarity with the facts of the case. "It is hornbook law . . . that '[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'" *Gunnells*, 348 F.3d at 430 (citations omitted); *Lloyd v. General Motors Corp.*, 266 F.R.D. 98, 104 (D. Md. 2010) (holding that class representatives "need not have extensive knowledge of the facts of the case in order to serve as adequate representatives").[8]

Primary counsel for plaintiffs in this case include Gilda "Jill" Hernandez and H. Forest Horne, Jr. Plaintiffs assert that these attorneys have the qualifications, experience, and resources to actively pursue this action, and defendant does not dispute this contention. In addition, plaintiffs' primary counsel have each submitted affidavits testifying to their experience and familiarity with complex civil litigation. (Aff. of Gilda "Jill" Hernandez (D.E. 73-20); Aff. of H. Forest Horne (D.E. 73-21)). Based on these affidavits and the court's direct observations of the manner in which these

---

[8] As these varying standards for the requirement of vigorous prosecution illustrate, there is inconsistency in the way in which the requirement for adequacy of representation has been both articulated and applied. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 n.7 (5th Cir. 2001) ("The task of defining the precise contours of rule 23(a)'s adequacy requirement was largely left to the lower courts after *Hansberry v. Lee*, 311 U.S. 32 . . . (1940). Consequently, there is a lack of uniformity in the various formulations of the requirements for adequacy." (internal citations omitted)). The inconsistency may arise, in part, from the fact that determining the adequacy of a named party's representation "is a question of fact that depends on the circumstances of each case." *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981).

counsel have handled various matters in this action to date, the court concludes that they are qualified to vigorously prosecute this action on behalf of the proposed class.[9]

As to the named plaintiffs themselves, the court's review of the record establishes that there is adequate participation by them. They have appeared for depositions (*see* D.E. 73-8 and 73-9) and submitted affidavits (*see* D.E. 73-13 and 73-14). Further, the deposition testimony of the named plaintiffs indicates their general understanding of their role and obligations as class representatives and the general nature of the damages that they and the absent class members purportedly incurred (*e.g.*, inadequate pay for time engaged in required activities). For example, Mitchell testified at her deposition that she understood that she commenced the lawsuit on behalf of other employees and that she had a basic understanding of the claims she was asserting. (Mitchell Dep. (D.E. 84-4) 79:10-12, 80:6-12). The deposition testimony of Cannon is in accord. (*See also, e.g.*, Cannon Dep., 88:10-21, 92:9-21 (stating his understanding that the action was brought on behalf of others and that the objective was to recover compensation for pre-shift and post-shift required activities).

The court also finds that the named representatives have adequate familiarity with the claims in this case. (Mitchell Dep. (D.E. 84-4) 79:10-12, 80:6-12; Cannon Dep., 88:10-21, 92:9-21). The record shows in particular that they are familiar with the job positions and protective equipment requirements. (*See generally* Mitchell Dep. 36:23-50:18; Cannon Dep. 43:6-52:12)).

Defendant contends that Mitchell and Cannon are nevertheless unfit to be class representatives because their truthfulness has been drawn into question by purported contradictions between statements in affidavits by them and their deposition testimony. For example, Mitchell's

---

[9] Counsel have not expressly moved to be appointed as class counsel pursuant to Rule 23(g). Rule 23(g) requires that the court appoint counsel for the class. Fed. R. Civ. P. 23(g). It will be recommended that counsel be provided an opportunity to file a motion for appointment as provided below.

affidavit indicated that she spent approximately 30 minutes before her shift putting on sanitary and protective items (Mitchell Aff. (D.E. 70-12) ¶ 6), but at her deposition she stated that she did not know how long it took her to engage in pre-shift donning and doffing activities (Mitchell Dep. 39:6-13, 41:3-15, 42:12-21, 66:6-14, 69:25-70:5). Similarly, in an affidavit Cannon stated that he spent approximately 30 minutes putting on protective items before his shift began (Cannon Aff. (D.E. 70-13) ¶ 6), but at his deposition said that he had no idea how long he spent on these activities (Cannon Dep. 43:6-13, 43:23-25, 44:10-14, 45:78, 46:8-12, 46:24-47:4, 47:19-23, 48:2-14, 48:25-49:2, 50:5–7, 51:4-8, 51:18-22).

The court does not find that these purported inconsistencies in testimony necessarily reveal a lack of truthfulness by Mitchell or Cannon and certainly not one so profound as to disqualify them as class representatives. Both plaintiffs explained at their depositions that they did not wear a watch while at work and accordingly any time estimates were just that, estimates. (Mitchell Dep. 36:11-15, 41:12-14; Cannon Dep. 48:8-14, 49:3-6). The passage of time since the events in question is also a relevant consideration. The court concludes that the vigorous prosecution requirement is met.

### b. **Common Interest**

A second component of the adequacy requirement is that the proposed representative's interests are aligned with the absent class members. The representative "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216 (1974). This commonality of interest is defeated if there exists a conflict of interest between the proposed representative and those he represents. The court must accordingly uncover such conflicts in applying the adequacy requirement. *Amchem*, 521 U.S. at 625. However, "[t]o defeat the adequacy requirement of Rule 23, a conflict

16

'must be more than merely speculative or hypothetical.'" *Gunnells*, 348 F.3d at 430 (quoting 5 *Moore's Federal Practice* § 23.25[4][b][ii] (2002)); *see also Serfaty v. Intern. Automated Sys., Inc.*, 180 F.R.D. 418, 420 (D. Utah 1998) ("Claims regarding theoretical issues that might arise are not sufficient to defeat class certification."); *Robertson v. Nat. Basketball Ass'n*, 389 F. Supp. 867, 899 (D.C.N.Y. 1975) ("Class action determination will not be denied, nor will the formulation of subclasses be required in the absence of a showing that the alleged potential conflicts are real probabilities and not mere imaginative speculation.").

The court finds that the interests of the proposed class representatives are aligned with those of the other putative class members. The court's prior discussion shows that these representatives share the same basic interest in this litigation as the absent members and have suffered the same alleged harm—namely, inadequate compensation for required work. Moreover, the named representatives have expressly stated their interest in having the absent class members appropriately compensated. (Mitchell Dep. 79:10-12; Cannon Dep., 88:10-21, 92:9-21). The court concludes that the common interest requirement is met. Thus, plaintiffs have satisfied all requirements of Rule 23(a).

## III. SATISFACTION OF RULE 23(b) REQUIREMENTS

As indicated, in addition to meeting the prerequisites of Rule 23(a), one of four alternative sets of requirements under Rule 23(b) must be met. Plaintiffs allege satisfaction of the requirements of both Rule 23(b)(1) and (b)(3). Each is addressed in turn below.

### A. Rule 23(b)(1) Requirements

Rule 23(b)(1) "applies where separate actions by or against individual class members would create a risk of 'establish[ing] incompatible standards of conduct for the party opposing the class,'

. . . such as 'where the party is obliged by law to treat the members of the class alike,' or where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests,' . . . such as in "limited fund' cases, . . . in which numerous persons make claims against a fund insufficient to satisfy all claims.'" *Dukes*, 131 S. Ct. at 2558 n.11 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614) (internal quotations and citations omitted); *Martin v. State Farm Mut. Auto. Ins. Co.*, No. 3:10–0144, 2011 WL 3667456, at *2 (S.D. W. Va. 22 Aug. 2011) (noting that Rule 23(b)(1) applies where "individual adjudication of the controversy would prejudice either the party opposing the class or the class members themselves"). The court finds that plaintiffs can more appropriately proceed under subsection (b)(3) than subsection (b)(1), and will therefore dispense with extended analysis of subsection (b)(1).

For example, certification under Rule 23(b)(1) makes joinder mandatory. *See McLaurin,* 271 F.R.D. at 472 n.5 ("It should be noted that plaintiffs have asked for class action certification under both subdivision (b)(1) and (b)(3) of Rule 23. If the court were to certify plaintiffs' class action under Rule 23(b)(1), potential plaintiffs would not be able to opt out of the class action because membership is mandatory under Rule 23(b)(1). Only if the court were to certify plaintiffs' class action under subdivision (b)(3) would there truly be an opt-in/opt-out situation." (internal citations omitted)). Plaintiffs' 19 July 2011 notice of supplemental authority (D.E. 111) appears to concede that Rule 23(b)(3) is the more appropriate subsection because "putative class members' due process rights will be protected since all putative class members will receive mandatory Notice as well as opt-in/out forms as required under both rules." (19 July 2011 Pls.' Supp. Auth. 3). The court accordingly turns to analysis of subsection (b)(3).

18

## B.     Rule 23(b)(3) Requirements

As indicated, Rule 23(b)(3) sets forth the requirements of predominance and superiority. To satisfy the predominance requirement, the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* Rule 23(b)(3) provides the following non-exclusive list of factors to be considered in the determination of both of these requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The purpose of subdivision (b)(3) is to identify the circumstances "'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Rule 23 advisory committee's notes (1966 amend. subdiv. (b)(3)).

### 1.     Predominance

The predominance requirement tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, and whether certification would promote judicial efficiency, *id.* at 615. *See also Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz,*

19

*Inc.*, No. 5:06-CV-160, 2008 WL 3914471, at *4 (E.D.N.C. 25 Aug. 2008) ("To determine predominance, a court should take the entire case into account, including the claims, defenses, facts, underlying substantive law, and even compulsory counterclaims and any permissive counterclaims already brought."). The predominance test is similar to the commonality test of Rule 23(a) but, as noted previously, is "more stringent." *Lienhart*, 255 F.3d at 146 n.4. It requires, of course, not only that members of the class have issues of law or fact in common, but that these common issues predominate over the individual issues. Fed. R. Civ. P. 23(b)(3). On the other hand, "[w]here after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims," the common issues do not predominate. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

As the foregoing suggests, to satisfy the predominance requirement the court generally needs to determine only whether the common questions predominate over individual questions as to liability. *Gunnells*, 348 F.3d at 428 (citing 5 Moore's Federal Practice § 23.46[2][a]). The need for individualized determination of the amount of compensatory damages suffered by the putative class members will not alone defeat certification. *Id.* at 429 (collecting cases). "In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Id.* at 428 (citing the advisory committee's note (1966 amend. subdiv. (c)(4)).

Here the court finds that the common issues predominate over the individual issues. Common issues of law and fact are presented over whether plaintiffs received adequate compensation for donning and doffing protective items and hygiene-related equipment; sanitizing their safety and sanitary equipment and gear; waiting to punch a time clock; waiting for the

20

production line to begin; and walking to and from the worksite on or near the processing floor. *See,*
*e.g., Romero*, 2011 WL 2358506, at *11 ("The Court finds that the legal and factual issues common
to the putative class predominate over any individual issues of law or fact. The common questions
of fact in this litigation are, without limitation: (1) [defendant's] uniform course of conduct and
alleged refusal to pay its production workers for all work performed before and after their line time
vis-a-vis donning, doffing, cleaning of safety and sanitary equipment and clothing, as well as for the
walking and waiting time related to these tasks . . . ."). The court accordingly concludes that this
requirement has been met.

### 2.    Superiority

The superiority test requires the court to "balance, in terms of fairness and efficiency, the
merits of a class action against those of alternative available methods of adjudication." *Danvers*
*Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) (internal quotation marks and
citations omitted). The court finds that this requirement is met.

The most salient factor bearing on superiority of class certification here is the small value of
the individual claims at issue. The small value of individual claims makes it unlikely that individual
plaintiffs would pursue their claims except through the class action mechanism. The further fact that
none of the putative class members are any longer employed by defendant at the K-1 facility, which,
again, has closed, would also tend to discourage individual lawsuits. They certainly would have little
interest in controlling the prosecution of such an action. *See* Fed. R. Civ. P. 23(b)(3)(A).

In addition, it would be difficult, if not impossible, to retain competent counsel to handle
such a case. *See Mace*, 109 F.3d at 344 ("A class action solves this problem [lack of incentive to
pursue recovery of small amounts] by aggregating the relatively paltry potential recoveries into

21

something worth someone's (usually an attorney's) labor."); *see also Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 161 (1974) ("A critical fact in this litigation is that petitioner's individual stake in the damages award he seeks is only $70. No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit proceed as a class action or not at all."); *Newberg*, 4:27 ("When the claims of class members are small, denial of a class action would effectively exclude them from judicial redress."). Moreover, judicial efficiency would be promoted by having the claims of the putative class members brought in a single action, rather than in potentially more than 1,000 actions.

The court also believes that there is no more efficient manner in which to manage the claims of the putative class than through a class action. The common issues of liability and the individualized determination of the amount of any compensatory damages for the named plaintiffs could be adjudicated at a single trial with the named plaintiffs. If necessary, the individualized determinations of damages for class members could be easily and efficiently relegated to a proof of claim process supervised by a judicial officer or qualified court-appointed administrator. *See* Fed. R. Civ. P. 23(b)(3)(D), 53(a)(1)(B) (permitting the court to appoint a master to "perform an accounting or resolve a difficult computation of damages"); *see also Newberg*, § 9:55 ("[W]hen liability has been determined in favor of the class and a formula for individual proof of damages has been established that is capable of being uniformly applied, the courts have frequently referred the determination and distribution of damages claims to a special master.").

Lastly, all litigation arising from the pay practices at the K-1 facility is before this court. There accordingly is no issue of coordinating this litigation with cases in other forums. *See* Fed. R. Civ. P. 23(b)(3)(B), (D). In addition, this court is an appropriate forum for resolution of the putative

22

class members' claims because, among other reasons, the facility at which they worked was in Kinston, which is in this district. The court does not anticipate difficulties in managing the class action.

The court therefore concludes that plaintiffs' NCWHA claims meet the requirements of Rule 23(b)(3). The court having already found that the claims meet the requirements of Rule 23(a), it will be recommended that plaintiffs' motion seeking certification of these claims as a class action under Rule 23 be allowed and that the claims be so certified.

**CONDITIONAL CERTIFICATION OF FLSA CLAIMS UNDER § 216(b)**

**I.     CONDITIONAL CERTIFICATION REQUIREMENTS**

The FLSA provides that an action for unpaid minimum wages and overtime pay may be maintained against an employer by "any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute goes on to state that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* There are accordingly two requirements for maintenance of a representative action under the FLSA: (1) the plaintiffs in the proposed class must be "similarly situated" and (2) they must opt in by filing their consent to sue with the court. *See id.*; *Jimenez-Orozco v. Baker Roofing Co.*, No. 5:05-CV-34-FL, 2007 WL 4568972, at *6 (E.D.N.C. 21 Dec. 2007); *De Luna-Guerrero v. N.C. Growers Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). To be similarly situated to plaintiffs for purposes of § 216(b), persons "'must raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job

23

requirements and pay provisions, but their situations need not be identical.'" *De Luna-Guerrero*, 338 F. Supp. 2d at 654 (quoting *The Fair Labor Standards Act* § 18.IV.D.3 (Ellen C. Kearns ed.)).

Ordinarily, certification of a representative action is a two-step process. *Baker Roofing*, 2007 WL 4568972, at *6; *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). At the notice stage, early in a case, the court conditionally certifies the class based on the limited record before it and approves notice to putative class members of their right to opt in. *Id.* The final determination on certification is made later, typically after discovery, when the court has available to it substantially more information. *Id.*

The court also notes that claims subject to certification under § 216(b) may appropriately be brought in the same lawsuit as claims subject to certification under Rule 23 where, as here, the essential facts and issues regarding each set of claims are likely to be the same and proceedings are not likely to be rendered unduly burdensome by inclusion of both sets of claims. *See Romero*, 2011 WL 2358506, at * 8; *Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001).[10] The standard for conditional certification is a lenient one whereby "a court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)). "Plaintiffs bear the burden of demonstrating a reasonable basis for their claim of class-wide discrimination . .

---

[10] *See also McLaurin*, 271 F.R.D. at 474 ("[T]he weight of authority . . . supports the exercise of supplemental jurisdiction in this case. The court also finds that consolidating the state law claims with the federal claims would be much more efficient. Retaining the state law claims promotes judicial economy, because it avoids the substantial problem of parallel lawsuits in state and federal court and avoids duplication of work and waste of judicial resources. The FLSA and state law claims are premised on the same facts and likely will succeed or fail together. Additionally, it is far more convenient for the parties to have their nearly identical claims resolved in one forum, despite the logistical problems inherent in such a lawsuit. As a result, the court will exercise supplemental jurisdiction over the state law claims in this case.").

. [and] plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. Kmart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citations omitted); *see also Young*, 229 F.R.D. at 55 ("[C]ase law imposes only a very limited burden on plaintiffs for purposes of proceeding as a collective action."). Conditional certification, as well as issuance of a notice, does not require the court to adjudicate plaintiffs' claims on the merits. *Gieseke v. First Horizon Home Loan Corp.*, No. Civ. A.04-2511, 2006 WL 75290, at *4 (D. Kan. 10 Jan. 2006).[11]

As indicated, the class which the named plaintiffs seek to have certified for purposes of § 216(b) is co-extensive with the class proposed under Rule 23. (Amend. Compl. ¶ 36). It is apparent that the persons in this class are similarly situated to Mitchell and Cannon within the meaning of § 216(b). As discussed, like Mitchell and Cannon, the other putative class members were pork processing workers employed by defendant at the K-1 facility and paid on a gang time system during the class period. As such, they were subject to the same compensation practices as Mitchell and Cannon, and accordingly suffered from the same alleged failure to be properly paid for all compensable work activities. The claims of the absent members of the class therefore challenge the same practices Mitchell and Cannon challenge for nonpayment of wages for hours worked. Over 300 additional pork processing plant workers have already filed consents to opt into this case. (Pls.' Mem. 5-6).

---

[11] *See also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) ("The court need only reach a *preliminary* determination that potential plaintiffs are 'similarly situated.' Certainly the Plaintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion." (emphasis in original) (internal citations omitted)); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist.").

The FLSA claims asserted in this case therefore meet the requirements to proceed as a representative action under § 216(b). Plaintiffs' motion seeking conditional certification as a representative action should accordingly be allowed.

## II. NOTICE TO PUTATIVE CLASS MEMBERS

As alluded to previously, plaintiffs also request that the court approve their proposed notice of the case and consent-to-sue form, authorize distribution of the notice and form to prospective class members, and order production by defendants of contact information for prospective class members. Although a court is not required to authorize plaintiffs to communicate with putative class members via an approved notice, where the court determines that the proposed class members are similarly situated, as here, the issuance of a notice to all potential class members is appropriate. *See Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306-07 (S.D.N.Y. 1998). The requested disclosure of contact information for potential class members would obviously facilitate provision of notice.

It will therefore be recommended that the portion of plaintiffs' motion relating to notice and contact information be allowed, except as to the content of the notice. Defendant requested that, in the event court allowed certification, it be permitted an opportunity to confer with plaintiffs in an attempt to develop an amended notice acceptable to all parties. (*See* Def.'s Mem. (D.E. 84) 29 n.11). Defendant's request is a reasonable one, and it will be recommended that it be allowed. In addition, the court is concerned about the practicability of leaving entry into the class without a date certain in May 2008. As detailed below, it will be recommended that the parties be provided an opportunity to address this concern in further submissions on the notice and form.

26

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that an order be entered providing as follows:

1.     Plaintiffs' motion to certify their NCWHA claims as a class action pursuant to Fed. R. Civ. P. 23 (D.E. 72) is ALLOWED on the terms set forth below.

2.     Plaintiffs' motion to conditionally certify their FLSA claims as a representative action (D.E. 69) pursuant to 29 U.S.C. § 216(b) is ALLOWED on the terms set forth below.

3.     This case shall proceed with respect to the NCWHA claims as a class action under Rule 23 and with respect to the FLSA claims as a representative action under § 216(b).

4.     Subject to amendment specifying a day certain in May 2008, the class is defined as follows with respect to both plaintiffs' NCWHA claims and FLSA claims:

> All former production and support employees who were employed by Smithfield Packing Company, Inc., as non-exempt, hourly employees at the "K-1" Kinston, North Carolina facility, at any period of time from October 24, 2005 until May 2008, who were paid on "GANG TIME" basis.

5.     Counsel for plaintiffs and counsel for defendant shall confer regarding plaintiffs' proposed notice and consent-to-sue form. Within 14 days after entry of this order, the parties shall jointly file a notice indicating the terms of the notice and consent-to-sue form agreed upon or, if agreement is not reached, the terms proposed by each side and the objections by each side to differing terms proposed by the other side. The parties' submission shall address the foregoing concerns regarding the specific end date in May of 2008 for the class period. The court will review the parties' submission and issue a further ruling on the terms of the notice and the form.

6.     Any counsel wishing to proceed as class counsel pursuant to Rule 23(g) shall file an appropriate motion within 14 days after entry of this order.

7.    Defendant shall provide plaintiffs with names and last known addresses of all putative class members within 14 days after entry of this order. For purposes of this directive, pending specification of the ending date in May 2008 pursuant to paragraph 5 above, the class period shall be deemed to extend until 31 May 2008 to ensure the completeness of the information defendant produces.

IT IS ORDERED that the Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 9 September 2011 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections are due no later than seven  days from service of the objections or 16 September 2011, whichever is earlier.

SO ORDERED, this 15 day of September 2011.

James E. Gates
United States Magistrate Judge